| | | |
|---|---|---|
| O.B., et al., individually and on behalf of a class, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 15 C 10463 |
| FELICIA F. NORWOOD, in her official capacity as Director of Healthcare and Family Services, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Plaintiffs O.B., C.F., J.M., S.M., Sa.S., and Sh.S. (collectively, "Plaintiffs") bring this four-count action pursuant to 42 U.S.C. § 1983 and various provisions of Title XIX of the Social Security Act (the "Medicaid Act"), 42 U.S.C. §§ 1396 *et seq.* (Counts I and II); the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101 *et seq.* (Count III); and the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.* (Count IV). Plaintiffs allege that they are Medicaid-eligible children with disabling and chronic health conditions who are "eligible for Medicaid-funded in-home shift nursing services." Compl., Dkt. 1, ¶¶ 1-2. According to Plaintiffs' Complaint, Defendant Felicia F. Norwood ("Norwood"), the Director of the Illinois Department of Healthcare and Family Services ("HFS"), "has failed to arrange for adequate in-home shift nursing services" for Plaintiffs and the class they seek to represent. *Id.*

Now before the Court are two motions: Norwood's motion to dismiss Plaintiffs' Complaint (Dkt. 21), and Plaintiffs' motion for a preliminary injunction (Dkt. 6). For the following reasons, Norwood's motion to dismiss is granted as to plaintiffs Sa.S. and Sh.S.,[1] and otherwise denied; and Plaintiffs' motion for preliminary injunction is granted in part, and otherwise continued for status and to allow Norwood to identify any disputed issues of fact requiring a hearing.

## DISCUSSION

The factual and statutory background underlying both Norwood's motion to dismiss and Plaintiffs' motion for preliminary injunction is undisputed. As Norwood's Memorandum explains, "to qualify for federal financial participation, HFS was required to adopt and obtain federal approval of a Title XIX State Medicaid plan." Dkt. 22, at 5. "Title XIX requires a state participating in the Medicaid program, as a condition of its participation, to include early and periodic screening, diagnostic, and treatment services ('EPSDT') as part of its State Medicaid plan." *Id*. "State law requires that children seeking Medicaid-funded in-home nursing services request prior authorization for such services from HFS and demonstrate the medical necessity for the services." *Id*. at 1-2. "Each Plaintiff has been approved for [EPSDT] in-home shift nursing services." *Id*. at 1; Dkt. 7, at 9.

---

[1] Norwood moves to dismiss the claims brought by Sa.S. and Sh.s. for mootness, because those children have now relocated out of state, and all Illinois public assistance benefits for those children have thus been canceled. *See* Dkt. 22, at 3-4. Since "Plaintiffs agree that Sa.S.'s and Sh.S.'s claims are moot," Dkt. 32, at 1 n.1, Norwood's motion to dismiss their claims is granted.

"When HFS grants prior approval for in-home shift nursing services it issues a written notice to the participant that either grants prior approval of a specific number of nursing hours per week, or grants approval of a specific monthly budget to enable the family to pay for nursing services." Dkt. 22, at 2. While Norwood disputes whether Plaintiffs will be irreparably injured as a result of not receiving the full component of in-home shift nursing services that HFS approved for them (*see* Dkt. 25, at 11-12), at no point does she dispute that Plaintiffs are not receiving all such approved services, much less with the "reasonable promptness" required by 42 U.S.C. §1396a(a)(8).

## I.  Norwood's Motion to Dismiss

Norwood's motion to dismiss has two prongs. She argues first that the Supreme Court's recent decision in *Armstrong v. Exceptional Child Ctr.*, 135 S. Ct. 1378 (2015), "forecloses" any private right of action seeking to enforce the Medicaid Act provisions Plaintiffs assert (Counts I and II), and similarly precludes relief under the ADA and Rehabilitation Act (Counts III and IV). *See* Dkt. 22, at 4-12, 15. Second, Norwood argues that Plaintiffs' ADA and Rehabilitation Act claims further fail under Seventh Circuit precedent. *Id*. at 12-14. Both arguments are unavailing.

### A.    The Medicaid Act Claims

Plaintiffs' Medicaid Act claims fall into two categories. "Count I alleges that the Defendant violated EPSDT provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(B), and 1396a(a)(43)(C)," and Count II seeks "to

enforce the reasonable promptness provision, 42 U.S.C. § 1396a(a)(8)." Dkt. 32, at 2-4. Plaintiffs correctly assert that the Seventh Circuit and Illinois district courts "have specifically held these provisions create federal rights under § 1983 that Medicaid beneficiaries can enforce." *Id.* (citing, *inter alia*, *Bontrager v. Ind. Fam. & Soc. Servs. Admin.*, 697 F.3d 604, 607 (7th Cir. 2012) (regarding § 1396a(a)(10)(A)); *Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452, 457-58 (7th Cir. 2007) (regarding § 1396a(a)(8)); *Miller v. Whitburn*, 10 F.3d 1315, 1319 (7th Cir. 1993) (regarding § 1396a(a)(10(A) and § 1396d(a)(4)(B)); *N.B. v. Hamos*, No. 11 C 06866, 2013 WL 6354152, at *3-6 (N.D. Ill. Dec. 5, 2013) (regarding § 1396a(a)(43))).[2]

In *Bontrager*, the Seventh Circuit reaffirmed this holding in light of more recent Supreme Court decisions stating "a new analytical approach" for determining whether a federal statute affords a private right of action—*Blessing v. Freestone*, 520 U.S. 329, 340 (1997), and *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002). In so doing, the court observed that "post-*Blessing* and *Gonzaga*, several circuit courts have held that the Medicaid provision at issue creates an enforceable federal right." *Bontrager*, 697 F.3d at 606-07. Plaintiffs make the same point: "every circuit court to have decided the question has concluded that Medicaid beneficiaries can enforce the EPSDT provisions" and "the reasonable promptness provision." Dkt. 32, at 3.

---

[2] As *Hamos* explains, while the Seventh Circuit has not expressly addressed the availability of a private action under § 1396a(a)(43), it did recognize in *Bertrand* a private right to enforce § 1396a(a)(8), which "is part of the same statutory subsection as § 1396a(a)(43), the primary EPSDT provision; both are enumerations of what a 'State plan for medical assistance *must provide*.'" *Hamos*, 2013 WL 635152, at *3 (emphasis in original)).

Norwood admits to being "well aware" of these holdings (Dkt. 34, at 5), but insists they are not controlling here. According to Norwood, Plaintiffs' Medicaid-related claims do not arise under the foregoing sections of the Medicaid Act, but instead arise under § 1396a(a)(30)(A), which governs "Medicaid reimbursement rates and access to Medicaid providers." *Id.* So, the argument goes, Plaintiffs' Medicaid claims must be dismissed both "for Plaintiffs' failure to invoke the statue that governs Defendant's alleged obligations respecting these subjects," and because the Supreme Court's recent ruling in *Armstrong* "completely forecloses Plaintiffs from pursuing any claims that arise out of 42 U.S.C. § 1396a(a)(30)(A)." Dkt. 22, at 9. There are several problems with this argument.

For one thing, *Armstrong* was a plurality opinion, with only a minority of Justices joining in the portion on which Norwood relies (Part IV). Thus, as several district courts have now recognized, its analysis "is not part of the majority decision and is therefore not binding." *Unan v. Lyon*, NO. 2:14-cv-13470, 2016 WL 107193, at *11 (E.D. Mich. Jan. 11, 2016).[3] But as important, this discussion in *Armstrong* is also inapposite here, because it addresses a different statutory provision, asserted by different plaintiffs, under a different theory. The *Wong* court summarized these distinctions in language equally applicable to this case:

---

[3] *See also*, *e.g.*, *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, -- F. Supp. 3d --, 2015 WL 6551836, at *24 (M.D. La. Oct. 29, 2015) (the "plurality's construal" in *Armstrong* was "dicta," and does not disturb precedent holding a private right of action exists to enforce other subparagraphs of §1396a(a)); *J.E. v. Wong*, -- F. Supp. 3d.--, 2015 WL 5116774, at *7 (D. Haw. Aug. 27, 2015) ("Part IV was not joined by a majority of the Court and is a plurality opinion. It is also *dicta*.").

> First, Plaintiffs are Medicaid beneficiaries entitled to EPSDT services, not Medicaid providers.  Second, Plaintiffs' suit relies on 42 U.S.C. § 1983.  Plaintiff does not rely on the Supremacy Clause or an equity theory.  Third, Plaintiffs sue for EPSDT services pursuant to individual rights conferred by 42 U.S.C. §§ 1396a(a)(10) and (43), not for higher provider reimbursement rates based on the federal agency directive in 42 U.S.C. § 1396a(a)(30).

*Wong*, 2015 WL 5116774, at *7.

*Armstrong* emphasizes the first of these differences in the very passage on which Norwood relies:  "We doubt, to begin with, that providers are intended beneficiaries (as opposed to mere incidental beneficiaries) of the Medicaid agreement, which was concluded for the benefit of the infirm whom the providers were to serve, rather than for the benefit of the providers themselves."  *Armstrong*, 135 S. Ct. at 1387.  Given this clarification in *Armstrong* itself that Medicaid-eligible participants (such as Plaintiffs here) are intended beneficiaries of the Act, and the different statutory provisions at issue in this case (EPSTD and reasonable promptness provisions), this Court concurs with those holding "that the *Armstrong* decision is distinguishable from the present case and does not dictate that Plaintiffs are deprived of a private right of action to enforce their rights to EPSDT services."  *Wong*, 2015 WL 5116774, at *7; *Unan*, 2016 WL 107193, at *11 ("The discussion in *Armstrong* regarding the private enforcement of Medicaid provisions is therefore not binding and is inapposite to the present action.").

Arguing against this result, Norwood contends that the statutes "nominally" asserted by Plaintiffs are not dispositive, Dkt. 22, at 12, because their claims really

seek "to raise Medicaid reimbursement rates to in-home shift nursing agencies in order that they may secure Medicaid services." Dkt. 34, at 4. According to Norwood, "the subjects of Medicaid reimbursement rates and access to Medicaid providers are expressly included in Section 1396a(a)(30(A)," and *Armstrong* bars any attempt to privately enforce any provision of the Medicaid Act when it would require the Court to undertake the activities included in Section 1396a(a)(30)(A)." *Id*. at 5. Plaintiffs may not circumvent this prohibition, Norwood argues, "by invoking other general statutes that have been held to confer rights to Medicaid 'services.'" *Id*. But Norwood's support for this premise—a handful of references to provider reimbursement rates in Plaintiffs' 200-paragraph Complaint—cannot bear its weight.

For instance, Norwood relies heavily on Plaintiffs' allegations that the in-home nursing services they receive rate only $35.03 for a registered nurse and $31.14 for a licensed practical nurse (later reduced to $29.16 and $25.92, respectively), whereas "Defendant will pay $72.00 per hour for other Medicaid enrollees, and its sister agency, the Department of Children and Family Services, will pay nursing agencies $45.00 per hour for in-home nursing." *See* Dkt. 32, at 14; Dkt. 34, at 2 (quoting Compl., ¶¶ 13- 15). Similarly, Norwood points to Plaintiffs' companion allegation that a $10-rate increase (which might place them in closer stead with other Medicaid participants) would be born partially by the federal government, easing the burden on the State. Dkt. 34, at 2. But Norwood overlooks the fact that Plaintiffs point to these rate discrepancies to support their ADA and Rehabilitation Act claims that "they are

being treated worse than other persons with disabilities," for whom the State pays higher rates for services. Dkt. 32, at 14. As to their Medicaid claims, however, "Plaintiffs are not arguing that the Defendants must raise reimbursement rates for in-home nursing services. Rather, they argue that the Defendant must, in one way or the other, arrange for these services when they are medically necessary." *Id*. at 6.

The Court agrees with Plaintiffs that the inclusion of these allegations (largely in support of different claims under different statutes) "does not convert Plaintiffs' claims into a request for higher Medicaid reimbursement rates to be paid to in-home nursing service providers." Dkt. 32, at 6. To hold otherwise would improperly convert a claim for services under the EPSDT and reasonable promptness provisions of the Medicaid Act—long recognized by a multitude of courts, including the Seventh Circuit—into one for an increase in rates under § 1396a(a)(30)(A), just to strike it down under *Armstrong*. Nor does *Armstrong* require any such departure from existing precedent. As other courts have recognized, it was well established long before *Armstrong* that § 1396a(a)(30(A) could not be privately enforced by Medicaid providers, whereas the EPSDT and reasonable promptness provisions of the Medicaid Act could be privately enforced by Medicaid participants.[4] *Armstrong's* uncontroversial affirmation of the former does nothing to abrogate the latter.

---

[4] *See*, *e.g.*, *Planned Parenthood*, 2015 WL 6551836, at *27 ("Neither revolutionary nor anomalous, *Armstrong* actually aligned with a majority of federal courts in its construction of Section 1396a(a)(30) as to Medicaid providers" (citing cases)); *Wong*, 2015 WL 5116774, at *7 ("The *Armstrong* Court's discussion

## B.    The ADA and Rehabilitation Act Claims

Norwood's challenge to Plaintiff's ADA and Rehabilitation Act claims similarly relies upon inapposite case law.  To the extent Norwood again asserts that "such relief has been foreclosed by *Armstrong*" (Dkt. 22, at 15), that argument fails for the reasons explained above.  And to the extent Norwood argues that these claims are foreclosed by the Seventh Circuit's decision in *Amundson ex rel. Amundson v. Wisc. Dep't of Health Servs.*, 721 F.3d 871 (7th Cir. 2013), the Court disagrees.

As Norwood acknowledges, Plaintiffs' predicate their ADA and Rehabilitation Act claims, at least in part, "on Defendant's alleged violation of the integration mandates."  *See* Dkt. 22, at 13.[5]  Such mandates require that a public entity "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."  *See* Compl., Dkt. 1, ¶ 52 (quoting ADA integration mandate, 28 C.F.R. § 35.130(d)); ¶ 55 (quoting Rehabilitation Act integration mandate, 28 C.F.R. 41.51(d)).  Plaintiffs contend that "Defendant is failing to arrange for the necessary in-home nursing services" for "children who have multiple disabling conditions" (such as C.F., J.M., and S.M.),

---

regarding the lack of a private cause of action to enforce Section 1396a(a)(30) was not a departure from existing precedent." (citing cases)).

[5] As noted above, Plaintiffs also allege that "they are being treated worse than other persons with disabilities," for whom the State pays higher hourly rates for services.  *See* Dkt. 32, at 14; Compl., Dkt. 1, ¶¶ 13-15.  Norwood does not challenge this aspect of Plaintiffs' ADA and Rehabilitation Act claims; nor does she respond to Plaintiffs' argument that *Amundson* acknowledges their viability.  *See* 721 F.3d at 874-75 (acknowledging discrimination claim where a state "buys the best available care" for one disability, "but pays only for mediocre care" for another); Dkt. 32, at 14.

"and, as a result, the children are facing institutionalization/hospitalization." Dkt. 32, at 11. Supreme Court and Seventh Circuit precedent hold that such "'unjustified institutional isolation' of a disabled individual receiving medical care from a State amounts to an actionable form of discrimination" under the ADA and Rehabilitation Act and their implementing regulations (*i.e.*, the foregoing integration mandates). *See Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 607-08 (7th Cir. 2004) (quoting *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597-603 (1999)).

Norwood argues that the claims of C.F., J.M., and S.M. are nevertheless barred by the Seventh Circuit's recent decision in *Amundson*. According to Norwood, *Amundson* "holds that there is no legal injury for ADA and Rehabilitation Act purposes when the Defendant's provision of fewer services does not force an individual into a less integrated setting." *See* Dkt. 22, at 13 (citing *Amundson*, 721 F.3d at 874). Thus, Norwood argues, "since the setting in which they receive their nursing services, their own homes, has not changed, they have no claim under the integration mandates regardless of the purported inconvenience to family members." *Id.* at 14. To support this argument, Norwood cites two Indiana district court decisions that describe *Amundson's* "ripeness" analysis as "categorical"—in other words, "absent actual institutionalization, the plaintiffs' integration-mandate claims were unripe." *See Maertz v. Minott*, No. 1:13-cv-00957-JMS-MJD, 2015 WL 3613712, at *13 (S.D. Ind. June 9, 2015); *Beckem v. Minott*, No. 1:14-cv-00668-JMS-MJD, 2015 WL 3613714, at *12 (S.D. Ind. June 9, 2015).

Plaintiffs counter with a contrary Illinois decision brought against the same defendant sued here, *M.A. v. Norwood*, -- F Supp. 3d --, 2015 WL 5612597 (N.D. Ill. Sept. 23, 2015). The *M.A.* court did not read *Amundson* "so narrowly," and therefore disagreed with *Maertz* and *Beckem*, instead holding that plaintiffs need not allege actual institutionalization to state ADA and Rehabilitation Act claims where "the threat of their institutionalization is real." *Id*. at *10-11 and n.12. Such a "real" threat existed in *MA*, the court reasoned, because (unlike *Amundson*) the Director "made no representation indicating that . . . plaintiffs (and putative class members) would not face imminent institutionalization." *Id*. at *11; *see also Amundson*, 721 F.3d at 874 ("Wisconsin maintains that it has safeguards in place that will prevent any plaintiff from being transferred to an institution.").

Norwood has similarly declined to give such assurances here. On the contrary, Norwood's reply brief not only fails to respond to Plaintiffs' argument regarding the lack of such a representation (*see* Dkt. 32, at 13), it fails to support her motion to dismiss Plaintiffs' ADA and Rehabilitation Act claims in any respect, which is reason enough to deny the motion.[6] But all waivers aside, given that Norwood's motion is indeed a Rule 12(b)(6) motion to dismiss (not one for summary judgment as in *Maertz* and *Beckem*), the Court agrees that C.F., J.M., and S.M. "should have the opportunity to complete discovery and flesh out their claims." *See* Dkt. 32, at 13 and n.6.

---

[6] *See In re LaMont*, 740 F.3d 397, 410 (7th Cir. 2014) (failure to reply to argument in response brief conceded issue) (citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

The same is true of Plaintiffs' claim that O.B. and similarly situated children are "segregated in an institutional or hospital setting in order to get necessary nursing services although they *can* and *should* be receiving those services in more integrated, home settings."  Dkt. 32, at 10.  As Plaintiffs correctly argue, the Supreme Court and Seventh Circuit have both recognized a discrimination claim for "community-based treatment for individuals with disabilities" whose "placement into such programs had been delayed."  *See Radaszewski*, 383 F.3d at 608 (sustaining claim for continued in-home private-duty nursing, citing *Olmstead*, 521 U.S. at 607); Dkt. 32, at 10-11.[7]

*Radaszewski* recites three requirements for such a claim under the ADA and Rehabilitation Act:  (1) "the State's treatment professionals find that such treatment is appropriate," (2) "the affected individuals do not oppose community-based treatment," and (3) "placement in the community can be reasonably accommodated, taking into account the State's resources and the needs of others with similar disabilities."  *Id.*, 383 F.3d at 608 (construing *Olmstead*, 521 U.S. at 607).  As discussed further below, Norwood disputes that at least the first of these requirements—*i.e.*, that O.B. "could be safely cared for in his parents' home with any amount of nursing"—is met here.  Dkt. 25, at 11.  *Radaszewski* teaches, however, that this determination "cannot be resolved on the pleadings."  *Id.*, 383 F.3d at 609-10.  Norwood's motion to dismiss this claim is therefore denied, as well.

--------

[7] Contrary to Norwood's argument (Dkt. 25, at 8), *Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906 (7th Cir. 2003), held no differently.  It merely remanded the ADA and Rehabilitation Act claims for consideration under *Olmstead* and the implementing regulations.  *See* 324 F.3d at 912-13.

## II. Plaintiffs' Motion for Preliminary Injunction

Having resolved Norwood's motion to dismiss, the Court turns to Plaintiffs' motion for a preliminary injunction, the requirements for which are well settled and undisputed. "To obtain a preliminary injunction, the moving party must demonstrate a reasonable likelihood of success on the merits, no adequate remedy at law, and irreparable harm absent the injunction." *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012); Dkt. 7, at 2-3; Dkt. 25, at 3. "If it makes this threshold showing, the district court weighs the balance of harm to the parties if the injunction is granted or denied and also evaluates the effect of an injunction on the public interest." *Planned Parenthood*, 699 F.3d at 972; Dkt. 25, at 3; Dkt. 7, at 3. Both sides also agree that these factors are weighed on a "sliding scale"—"the more likely the party's chance of success on the merits, the less the balance of harms need weigh in favor and vice-versa." Dkt. 25, at 3; Dkt. 7, at 3; *Planned Parenthood*, 699 F.3d at 972 (same).

An evidentiary hearing is required only to the extent "genuine issues of material fact are created by the response to a motion for a preliminary injunction." *In re Aimster Copyright Litig.*, 334 F.3d 643, 654 (7th Cir. 2003) (quoting *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997)); *Dexia Credit Local v. Rogan*, 602 F.3d 879, 884 (7th Cir. 2010) (same). "But as in any case in which a party seeks an evidentiary hearing, he must be able to persuade the court that the issue is indeed genuine and material and so a hearing would be productive—he must show in other words that he has and intends to introduce evidence that if believed will so

weaken the moving party's case as to affect the judge's decision on whether to issue an injunction." *Aimster*, 334 F.3d at 654 (quoting *GMA*, 132 F.3d at 1171). The Court considers Plaintiffs' preliminary injunction request with these standards in mind.

### A. Threshold Injunction Factors: Likelihood of Success, Inadequate Remedy at Law, and Irreparable Harm

Plaintiffs assert that they are likely to show that Norwood violated the EPSDT and "reasonable promptness" provisions of the Medicaid Act (Counts I and II), since it is undisputed "that Defendant found all named Plaintiffs and Class members eligible for Medicaid-covered in-home shift nursing services based on medical[] necessity," but "she has failed to provide adequate services for months, if not years, after the services were approved." Dkt. 7, at 9. Indeed, Norwood does not dispute that such services were both approved and undelivered. Instead, her opposition regarding Plaintiffs' likelihood of success on their Medicaid Act claims merely repeats the arguments Norwood made in support of her motion to dismiss. *See* Dkt. 25, at 6-9. Since those arguments fail for the reasons explained above, Plaintiffs' likelihood of success on Counts I and II is firmly established.

Plaintiffs' lack of an adequate remedy at law and irreparable injury in the event an injunction is denied on Counts I and II are similarly evident, given Norwood's concession that each Plaintiff has been "approved for [EPSDT] in-home shift nursing services," and that such approval required Plaintiffs to "demonstrate the medical necessity for the services." *See* Dkt. 22, at 1-2; *see also A.H.R. v. Wash. State Health Care Auth.*, No. C15-5701JLR, 2016 WL 98513, at *14-17 (W.D. Wash. Jan.

7, 2016) (no administrative remedy required, and irreparable injury demonstrated, where State "already determined the services that are needed"; "the abundance of case authority that has found irreparable harm when medical services are eliminated or reduced in similar situations") (collecting cases). Although Norwood now attempts to question whether the services that Plaintiffs demand are "medically necessary" (Dkt. 25, at 11), she offers no evidence calling into question her own HFS determinations. Thus, as in *A.H.R.*, "that issue has been resolved." 2016 WL 98513, at *17.

By contrast, Plaintiffs' ADA and Rehabilitation Act claims (Counts III and IV) raise certain factual issues. As explained above, although the Plaintiffs who remain in their homes (C.F., J.M., and S.M.) need not demonstrate actual institutionalization resulting from their non-receipt of all EPSDT services allotted to them, they nevertheless must demonstrate a real threat that institutionalization will follow from that deprivation. *See supra* Part I-B. As to these claims, therefore, the likelihood of success and irreparable injury factors substantially overlap. And while the medical necessity of the services that Plaintiffs demand "has been resolved" as noted above, the question of whether the denial of such services would lead to Plaintiffs' institutionalization has not. Norwood complains, for example, that several of Plaintiffs' supporting declarations "consist of the opinions of parents/caregivers who are complaining about inconvenience to them," as opposed to medical opinions demonstrating why or how the denials of EPSDT services that Plaintiffs are experiencing will cause their institutionalization. *See* Dkt. 25, at 11.

Similar factual issues are raised by O.B.'s ADA and Rehabilitation Act claims. As also discussed above, to support his claim for shift-nursing services in the more integrated setting of his home (as opposed to the hospital where he is now treated), O.B. must demonstrate that "the State's treatment professionals find that such treatment is appropriate," and that "placement in the community can be reasonably accommodated, taking into account the State's resources and the needs of others with similar disabilities." *Radaszewski*, 383 F.3d at 608. Plaintiffs similarly concede that a state "may defend by showing that a community setting cannot be accommodated without fundamental alteration to the entity's programs and services." Dkt. 7, at 12; *see also Radaszewski*, 383 F.3d at 607 (agency is "relieved" of obligation to "make such modifications as are 'reasonable' in order to avoid unduly segregating the disabled," if it can show that "'making the modifications would fundamentally alter the nature of the service, program, or activity.'" (quoting 28 C.F.R. § 35.130(b)(7)).

Norwood does not address whether in-home treatment of O.B. could be reasonably accommodated without "fundamental alteration" of HFS's programs and services, but does dispute that O.B. "could be safely cared for in his parents' home with any amount of nursing," given "his medical history and his medical complexity." Dkt. 25, at 11. Plaintiffs respond that "Defendant has already determined that 18 hours per day of nursing services would meet his medical needs at home and approved him to receive those services," and further note that O.B.'s "monthly hospital charges far exceed the cost of in-home services." Dk.t 31, at 7 n.2; Dkt. 7, at 13.

While Plaintiffs' account is compelling, the Court is mindful of *Radaszewski's* instruction that "the State always has the opportunity to show that adapting existing institution-based services to a community-based setting would impose unreasonable burdens or fundamentally alter the nature of its programs and services, and for that reason it should not be required to accommodate the plaintiff." *Radaszewski*, 383 F.3d at 611. Accordingly, the Court will allow Norwood the opportunity to request an evidentiary hearing regarding the following factual issues raised by Plaintiffs' ADA and Rehabilitation Act claims: (1) the feasibility of treating O.B. at home, (2) whether such in-home treatment would require fundamental alteration of HFS's program or services, and (3) the likelihood that reduced services to Plaintiffs who remain at home (C.F., J.M., and S.M.) would cause their institutionalization. As explained above, however, Norwood "must be able to persuade the court" that "a hearing would be productive," meaning that she "intends to introduce evidence that if believed will so weaken the moving party's case as to affect the judge's decision on whether to issue an injunction." *Aimster*, 334 F.3d at 654. The Court will hear from the parties regarding the need for any such hearing at the next scheduled status.

### B. The Form of Injunction

Having determined that Plaintiffs have already met the threshold requirements for injunctive relief on Counts I and II of their Complaint, the Court next addresses the form of injunction they propose. Plaintiffs request an injunction on Counts I and II (seeking EPSDT services with reasonable promptness) ordering the following:

A) that the Defendant, Felicia F. Norwood, take immediate and affirmative steps to arrange directly or through referral to appropriate agencies, organizations, or individuals, corrective treatment of in-home shift nursing services to the Plaintiffs and Class at the level approved by the Defendant, as required by the Medicaid Act . . . pending final judgment in this action or until further order of Court; and

B) that the Defendant provide to the Plaintiffs within 30 days the following: (1) what steps have been undertaken by the Defendant to arrange for in-home shift nursing services to the Plaintiffs and Class; and (2) an identifying list of the Class members which contains (a) their currently approved level of in-home shift nursing care and (b) how much of their in-home shift nursing care is actually being used or delivered to the Class during the preceding 90 days.

Norwood lodges several objections to this language. First is her opposition to the requirement of "immediate and affirmative steps." Norwood argues that this locution fails to comport with Fed. R. Civ. P. 65(d)(1)'s mandate that the injunction "describe in reasonable detail . . . the act or acts restrained or required." Dkt. 25, at 4. In a similar vein, Norwood complains that the injunction's reference to "the Medicaid Act" amounts to no more than a requirement "to follow the law without any description of what immediate and affirmative steps should be taken to follow the law." *Id*. at 5. According to Norwood, the injunction Plaintiffs propose "merely instructs the enjoined party not to violate a statute," and thus "increases the likelihood of unwarranted contempt proceedings for acts that are unrelated to what was originally contemplated as unlawful." *Id*. at 4. The Court disagrees.

While the Court is mindful of Seventh Circuit case law warning against an "obey-the-law injunction," *see E.E.O.C. v. Autozone, Inc.*, 707 F.3d 824, 841 (7th Cir.

2013), the injunction Plaintiffs have proposed is not that. It requires Norwood to take immediate and affirmative steps to provide the very in-home shift nursing services that HFS approved. Norwood knows what those services are and for whom they were approved because her agency approved them. *See* Dkt. 22, at 1 ("Each Plaintiff has been approved for Early and Periodic Screening, Diagnostic and Treatment ('EPSDT') in-home shift nursing services."). Nor is the injunction's reference to the Medicaid Act an "obey-the-law" infraction. For one thing, it distinguishes the relief from that Plaintiffs seek under the ADA and Rehabilitation Act (*e.g.*, treatment on par with persons with other disabilities). But also, it provides context for the nature of the required services—EPSDT services—which even Norwood acknowledges are defined in the Medicaid Act in considerable detail. *See* Dkt. 22, at 5-6 (quoting and discussing 42 U.S.C. §§ 1396a, 1396d. And, again, as Plaintiffs correctly assert, the injunction requires Norwood to provide only "the number of hours that she has determined are medically necessary through her own agency's process." Dkt. 31, at 2.

Norwood next complains that the injunction Plaintiffs propose would give her too much freedom, or in her words, improperly "shift all responsibility to determine how to comply to Defendant." Dkt. 25, at 5. Here again, the Court disagrees. After all, it is Norwood who stresses the "'sheer complexity' of the issue of access to Medicaid providers." Dkt. 22, at 12. Retaining Norwood's discretion to fashion the most effective but least burdensome method of providing the EPSDT services approved for each Plaintiff is thus prudent, and accords appropriate deference to HFS's "internal affairs." *See Katie A., ex rel. Ludin v. L.A. Cnty.*, 481 F.3d 1150,

1157 (9th Cir. 2007) (injunction requiring "only that defendants supply the services that the court found to be required under federal law" "appropriately allowed defendants an opportunity jointly to develop the remedial plan needed to implement the injunction"); *A.H.R.*, 2016 WL 98513, at *19 (noting "the federalism principles that require federal courts to grant each state the widest latitude in the dispatch of its own internal affairs," and following *Ludin* in allowing defendants "to develop the remedial plan needed to implement the injunction" (quoting *Ludin*, 481 F.3d at 1157). It is also consistent with the discretion conferred by the Medicaid Act itself. "While the states must live up to their obligations to provide all EPSDT services, the statute and regulations afford them discretion as to how to do so." *Ludin*, 481 F.3d at 1159; *see also Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1238 (11th Cir.2011) ("While the EPSDT mandate requires [a state Medicaid agency] to provide children, who meet the eligibility requirements, with medically necessary 'private duty nursing services' to 'correct or ameliorate' their conditions . . . the Medicaid Act does not set forth a uniform manner in which states must implement that EPSDT mandate.").

Norwood also opposes the proposed injunction's inclusion of class relief. She claims to lack "criteria that define membership in the class" and "reasonable assurances that the class would consist of individuals whose alleged in ability [sic] to staff their authorized nursing hours was a result of Defendant's purported violation of federal law." Dkt. 25, at 9. But the class criteria are clearly defined: "All Medicaid-eligible children under the age of 21 in the State of Illinois who have been approved for in-home shift nursing services by the Defendant, but who are not receiving in

home shift nursing services at the level approved by the Defendant," including children enrolled in a waiver program or a non-waiver program. Dkt. 1, ¶ 28. As Plaintiffs note, "Defendant need only review her own records to determine who these children are." Dkt. 31, at 9. Indeed, Norwood's memorandum describes the records HFS keeps regarding the children for whom such services have been approved and the services provided to them, if only to meet federal reporting requirements, Dkt. 22, at 5-6; and Plaintiffs' have identified other records available to HFS from its servicing agent, including summaries of the services provided (and not provided) from the nursing agencies to whom cases are assigned. *See* Dkt. 28. Such records would also satisfy Norwood's demand for assurances that the class consist solely of individuals whose inability "to staff their authorized nursing hours was a result of Defendant's purported violation of federal law," insofar as they reveal "any reasons for unfilled shifts," despite the federal requirement to provide the services allotted. *See id.*[8]

---

[8] Contrary to Norwood's contention that the Medicaid statutes at issue here "simply require the states to ensure that certain services are made available to Medicaid-eligible children," Dkt. 22, at 7, "numerous courts" have held that the statutes "render it mandatory for the state to provide as part of its EPSDT program every category of 'medical assistance'" enumerated in § 1396d(a). *See N.B. Hamos*, 26 F. Supp. 3d 756, 765 n.5 (N.D. Ill. 2014) (construing 42 U.S.C. §§ 1396d(a), 1396d(r)(5) and collecting cases); *accord Reese*, 637 F.3d at 1234 (construing 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a): "The 1989 Amendment [of the Medicaid Act] made it incumbent upon states to provide all 29 categories of care [enumerated in § 1396d(a)], including 'private duty nursing services,' to Medicaid-eligible children who qualify under the EPSDT provision."); *Ludin*, 481 F.3d at 1154 (states "must provide all of the services listed in § 1396d(a) to eligible children when such services are found to be medically necessary"). Even Norwood concedes that § 1396a(a)(8) provides "that medical assistance *will be furnished* with reasonable promptness to all eligible individuals." Dkt. 22, at 7 (emphasis added). And § 1396a(a)(43)(C) similarly requires "arranging for (directly or through referral to appropriate agencies,

Norwood contends that class-wide relief is inappropriate also because Plaintiffs purportedly fail to meet the criteria of Fed. R. Civ. P. 23(a), particularly commonality. But the class includes only plaintiffs who have been approved for EPSDT services and are not receiving them in full, and who seek to enforce their rights under the Medicaid Act to the services not provided. Proper common questions thus appear to include, at a minimum, whether "treatment found to be 'medically necessary,' and therefore mandatory for the state to provide, is nevertheless unavailable in Illinois," and "whether there is system-wide failure to provide services that already have been prescribed and that, therefore, the EPSDT program requires the State to provide." *See Hamos*, 26 F. Supp. 3d at 772 (certifying class of "children eligible for home and community-based services"). Contrary to Norwood's contention, these are issues of "systemic failure," not "individual violations of the same law" prohibited under *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), and *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481 (7th Cir. 2012). *See Hamos*, 26 F. Supp. 3d at 772.

But in any event, it is unnecessary to certify, or even conditionally certify, Plaintiffs' proposed class at this time. "The lack of formal class certification does not create an obstacle to classwide preliminary injunctive relief when activities of the defendant are directed generally against a class of persons." *See Lee v. Orr*, No. 13-cv-8719, 2013 WL 6490577, at *2 (N.D. Ill. Dec. 10, 2013) (quoting *Ill. League of Advocates for the Developmentally Disabled v. Ill. Dep't of Human Servs.*, No. 13 C

---

organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services."

1300, 2013 WL 3287145, at *3 (N.D. Ill. June 28, 2013)).  As in *Lee*, "this Court will forgo a conditional class ruling at this time, but use its general equity powers to order preliminary injunctive relief for the proposed []class of plaintiffs," as to Counts I and II of Plaintiffs' Complaint.

### C.    The Balance of Harms and Public Interest

Finally, with Plaintiffs' proposed injunction in mind, the Court considers the balance of harms to the parties if such an injunction were granted or denied, and its potential impact on the public interest, which Norwood correctly asserts are very much "related."  *See* Dkt. 25, at 12.  But Norwood is incorrect in asserting that any negative impact the injunction might have on HFS should "weigh much more heavily in Defendant's favor."  *See id.*  Because the Court concludes that Plaintiffs have established a high likelihood of success on Counts I and II, the balance of harms tips in their favor, not Norwood's.  *See Planned Parenthood*, 699 F.3d at 972 ("The more likely it is that the moving party will win its case on the merits, the less the balance of harms need weigh in its favor." (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1100 (7th Cir. 2008) (brackets omitted)).  In either case, however, the substantial benefit that the requested injunction could provide to Plaintiffs and the public easily outweighs the potential harm that Norwood identifies.

Norwood complains that HFS "would certainly not be able to recover from Plaintiffs any of the funds it would have to expend under the injunction, if Defendant were to prevail after a trial on the merits," and correspondingly, "that the injunction asked would adversely affect a public interest for whose impairment an injunction

bond cannot compensate." Dkt. 25, at 12.  Quite the opposite.  If anything, the public has an interest in seeing care and treatment that HFS has already determined to be medically necessary fully provided to the disabled children who seek it here.  Nor does the Court perceive an unjust harm perpetrated by HFS providing care and treatment that is medically (and statutorily) required.  Also of note is Plaintiffs' assertion (which Norwood does not dispute) that, as to institutionalized plaintiffs, "Defendant would expend considerable fewer resources to provide care at home than in an institutional setting."  Dkt. 7, at 13.  And as to plaintiffs who seek services to avoid such institutionalization, further cost savings may be possible, and the avoidance of such institutionalization is certainly desirable by the public, as well.

## CONCLUSION

Accordingly, for the foregoing reasons, Defendant's Motion to Dismiss (Dkt. 21) is granted as to Plaintiffs Sa.S. and Sh.S., and otherwise denied; and Plaintiffs' Motion for Preliminary Injunction (Dkt. 6) is granted as to Counts I and II of their Complaint.  Plaintiffs shall submit a proposed injunction order to Defendant's counsel for comment, and submit a final version to the Court's proposed order email address by March 28, 2016.  The case remains set for status on March 22, 2016, at which time the Court will hear from the parties regarding any need for a hearing on Plaintiffs' request for a preliminary injunction for Counts III and IV of their Complaint.

Dated:  March 21, 2016

Charles P. Kocoras
United States District Judge