# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| O.B., et al., individually and on behalf of a class,<br><br>Plaintiffs,<br><br>v.<br><br>FELICIA F. NORWOOD, in her official capacity as Director of Healthcare and Family Services,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  15 C 10463<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Plaintiffs O.B., C.F., J.M., and S.M. (collectively, "Plaintiffs") bring this four-count action pursuant to 42 U.S.C. § 1983 and various provisions of Title XIX of the Social Security Act (the "Medicaid Act"), 42 U.S.C. §§ 1396 *et seq*. (Counts I and II); the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101 *et seq*. (Count III); and the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq*. (Count IV). Plaintiffs allege that they are Medicaid-eligible children with disabling and chronic health conditions who are "eligible for Medicaid-funded in-home shift nursing services," Dkt. 1, ¶¶ 1-2, and that Defendant Felicia F. Norwood ("Norwood"), the Director of the Illinois Department of Healthcare and Family Services ("HFS"), "has failed to arrange for adequate in-home shift nursing services" for Plaintiffs and the class they seek to represent. *Id*. Now before the Court is Plaintiffs' Motion for Class Certification. *See* Dkt. 4. For the following reasons, that motion is granted.

# DISCUSSION

The factual and legal bases for Plaintiffs' claims are set out more fully in the Court's March 21 Opinion denying Norwood's motion to dismiss and granting Plaintiffs' motion for preliminary injunction. *See* Dkt. 36. As explained therein (and as Norwood has acknowledged), the Medicaid Act "requires a state participating in the Medicaid program, as a condition of its participation, to include early and periodic screening, diagnostic, and treatment services ('EPSDT') as part of its State Medicaid plan." *Id*. at 2 (quoting Dkt. 22, at 5). It is also undisputed that each of the Plaintiffs here "has been approved for [EPSDT] in-home shift nursing services." Dkt. 24, at 1. Plaintiffs' Medicaid Act claims (Counts I and II), allege that Norwood violated the EPSDT provisions of the Medicaid Act, 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(B), and 1396a(a)(43)(C), and its requirement to provide such services with "reasonable promptness," 42 U.S.C. § 1396a(a)(8). Compl., Dkt. 1, ¶¶ 174-82.

Plaintiffs' ADA and Rehabilitation Act claims (Counts III and IV) in turn assert the "integration mandates" for those statutes, which require a public entity to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." *Id*. at ¶¶ 184, 193. Plaintiffs allege that Norwood's failure to arrange in-home shift nursing services for class members places those children "at a serious risk of institutionalization or hospitalization" in violation of these integration mandates. *Id*. at ¶¶ 183-98. Plaintiffs also allege that "they are being treated worse than other persons with disabilities" for whom the State pays higher rates for services. *Id*. at ¶¶ 13-15; Dkt. 32, at 14.

Plaintiffs now seek to certify the following class for each of these claims:

> All Medicaid-eligible children under the age of 21 in the State of Illinois who have been approved for in-home shift nursing services by the Defendant, but who are not receiving in-home shift nursing services at the level approved by the Defendant, including children who are enrolled in a Medicaid waiver program, such as the Medically Fragile Technology Dependent (MFTD) Waiver program, and children enrolled in the nonwaiver Medicaid program, commonly known as the Nursing and Personal Care Services (NPCS) program.

Norwood "opposes certification of any class." Dkt. 24, at 3. She argues that "the members are not ascertainable," and that Plaintiffs have failed to satisfy "the criteria set forth in Fed. R. Civ. P. 23(a)(1)-(4) as construed in *General Telephone Co. of Southwest v. Falcon*, 456 U.S. 147 (1982)," and "Fed. R. Civ. P. 23(b)(2) as construed in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541 (2011)." *Id.* The Court considers each argument, in turn.

## I. Ascertainability

Norwood first contends that Plaintiffs' proposed class "lacks ascertainability." Dkt. 24, at 4. Seventh Circuit authority holds that this "implicit requirement under Rule 23" is satisfied where a class is "defined clearly" and membership is determined "by objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). Norwood insists that Plaintiffs' proposed class is unidentifiable because "it is impossible to know what children who have been approved for in-home shift nursing services 'are not receiving in-home shift nursing services at the level approved by the Defendant," and "class membership" would thus require an "individual merits inquiry." Dkt. 24, at 4, 6-7. The Court rejected these same arguments when granting

Plaintiffs' preliminary injunction request, *see* Dkt. 36, at 20-21, and does so again here, as have other courts under similar circumstances.

Contrary to Norwood's argument, the proposed class is clearly defined and based on objective criteria; it includes "children under the age of 21 in the State of Illinois who have been approved for in-home shift nursing services by the Defendant, but who are not receiving in-home shift nursing services at the level approved by the Defendant." Nor does membership in this class require "an individual merits inquiry." As explained in the Court's previous Opinion, Norwood has already admitted (as she must) that any approval for EPSDT services requires, as a matter of state law, an HFS determination that the services are medically necessary. *See* Dkt. 36, at 2; Dkt. 22, at 1-2. Thus, any "'individualized determinations' required in this case have already been made—by definition, the class would consist only of children who are not receiving services that have been prescribed as 'medically necessary' and which the state must therefore provide under the EPSDT program." *N.B. v. Hamos*, 26 F. Supp. 3d 756, 774-75 (N.D. Ill. 2014); *see also Lacy v. Butts*, No. 1:13-cv-811-RLY-DML, 2015 WL 5775497, at *4 (N.D. Ind. Sept. 30, 2015) ("fact-specific inquiries" already resolved by "condition of class membership") (citing *N.B. v. Hamos*). The record also demonstrates (indeed, Norwood has also admitted) the existence of HFS records demonstrating the children approved for such services and the services provided to them. *See* Dkt. 22, at 5-6 (describing HFS records); Dkt. 28 (describing additional records available to HFS). Class membership requires merely consulting those records.

4

Tacitly conceding the availability of such information, Norwood nevertheless insists that the proposed class is still unidentifiable because the foregoing information "only tells one that the allotted hours have not been billed in full for any number of reasons," not "whether the shortened hours are attributable to Defendant's alleged acts or omissions, or whether the shortened hours result from the acts or omissions of third parties not before the Court, such as nurses or nursing agencies." Dkt. 24, at 5-6. Norwood thus complains that the proposed class definition "does not identify children" who were "actually harmed" by "Defendant's purported violations of federal law." *Id*. As explained in the Court's prior Opinion, however, the record indicates that Norwood does have access to information demonstrating "any reasons for unfilled shifts," *see* Dkt. 36, at 21 (citing Dkt. 28), and thus appears able to determine which class members were "actually harmed" by her actions (or inactions). But, in any case, contrary to Norwood's demand for "assurances" that the class consist solely of members harmed by her "purported violations of federal law," Dkt. 24, at 5, class membership does not, and should not, be "tied to Defendant's ultimate liability in the case"—lest it create an "impermissible fail-safe class," to which Norwood herself vigorously objects. *Id*. at 7.

The Seventh Circuit has explained that a "fail-safe" class—"one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim"—"is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). "The key to

avoiding this problem is to define the class so that membership does not depend on the liability of the defendant." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 661 (7th Cir. 2015). As the Seventh Circuit has also explained, however, "[d]efining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner*, 669 F.3d at 825. The class definition proposed here strikes precisely this balance. On the one hand, the proposed class is definite and membership is based on objective criteria: non-receipt of EPSDT services at the level approved. On the other hand, membership does not depend upon Norwood's ultimate liability. While Plaintiffs claim that Norwood's agency (HFS) is obligated under the Medicaid statutes to provide approved EPSDT services (*see* Dkt. 1, ¶¶ 174-82; Dkt. 36, at n.8), and the non-receipt of such services at the level approved is a condition of class membership, such "shortened hours" (and thus class membership) do not *ipso facto* establish Norwood's liability, since (as even Norwood argues) "causation issues" exist "about whether the shortened hours are attributable to Defendants' alleged acts or omission" or "the acts or omissions of third parties." *See* Dkt. 24, at 6.

Finally, Norwood argues that the proposed class is still unascertainable because it "puts no time limits on membership" and thus "includes every Medicaid-eligible child who failed to receive a single authorized hour of in-home shift nursing . . . 'in the history of Time' who, was, is or will be . . . ." Dkt. 24, at 5. The Court disagrees. On its face, the proposed class definition includes only children "who **have been**

6

approved for in-home shift nursing services by the Defendant, but who *are not* receiving in-home shift nursing services at the level approved." The class thus embraces children *currently* approved for services and *currently* not receiving services at the level approved—not children who *will be* approved, or *will not receive* services *in the future*.[1] Norwood's claim that the proposed class definition is "breathtaking in its scope" thus rings hollow, particularly in light of her simultaneous charge that the proposed class fails even to meet the numerosity requirement of Rule 23(a), as discussed below. *See* Dkt. 24, at 5, 8.

## II.    Rule 23(a) Requirements

Norwood's challenge under Rule 23(a) thus begins with her observation that Plaintiffs' Complaint positively identified only the named Plaintiffs as children for whom "the Defendant failed to arrange for the delivery of in-home shift nursing services," two of whom have since been dismissed. Dkt. 24, at 8. Norwood argues that such a small number is insufficient to meet Rule 23(a)(1)'s numerosity requirement. *Id*. Plaintiffs responded by seeking limited discovery on the issue, *see* Dkt. 28, in response to which Norwood produced certain documentation, and

---

[1] Plaintiffs' defense of a class that "includes future members" (Dkt. 39, at 5) is perplexing, since their proposed class makes no reference to any future members or future acts or omissions. Nor is the Court persuaded that such open class membership is necessary here, even if such a class were feasible. *See*, *e.g.*, *N.B.*, 26 F. Supp. 3d at 768 ("the class cannot consist of 'future' Medicaid recipients," since membership depends on being "entitled to EPSDT services"). As discussed more fully below, both sides agree that Plaintiffs' claims seek to remedy an alleged "systemic failure to comply with the [EPSDT] component of the federal Medicaid Act." Dkt. 24, at 2; Dkt. 39, at 1. Success on such claims would thus require systemic modifications necessary to implement the Medicaid Act's EPSDT requirements, which would benefit not only the current class but future EPSDT-eligible children, as well.

7

Plaintiffs have now identified 75 additional similarly situated children, and represent that additional class plaintiffs "can be identified." *See* Dkt. 39, at 9 and n. 5. The Court agrees that such a group is large enough to justify class treatment, but not so large as to implicate Norwood' concerns of "breathtaking" scope. The Court also agrees that the composition of this group would make the joinder of individual plaintiffs, or the filing of separate actions, impracticable. As in *N.B.*, the putative plaintiffs here are "an extremely vulnerable population because of their youth—in most cases, the plaintiffs would need an adult next friend to initiate suit—severe health issues, and limited financial means," and are potentially "scattered throughout the state, impeding their ability to participate even if joinder could be accomplished." *N.B.*, 26 F. Supp. 3d at 770. Rule 23(a)(1)'s numerosity requirement is thus satisfied.[2]

The commonality requirement of Rule 23(a)(2) is also met. Here again, Norwood argues that the only common questions "are simply descriptions of Defendant's ultimate liability under Plaintiffs' various theories of recovery"—*i.e.*, whether she "violated the Medicaid Act or discriminated against them on the basis of their disabilities." Dkt. 24, at 9. According to Norwood, Plaintiffs have failed to allege "any policy or practice in which Defendant allegedly engages that operates to cause the same injury to the putative class members." *Id*. But even Norwood acknowledges Plaintiffs' allegation of a "systemic failure" to comply with the

---

[2] Given Norwood's production of the documents now cited in Plaintiffs' Reply, and the issue of numerosity having been resolved for certification purposes, the Court denies as moot Plaintiffs' prior Motion for Class Discovery on the Issue of Numerosity on an Expedited Bases. *See* Dkt. 28. Any remaining issues regarding the identity of class members may be resolved in the ordinary course of discovery.

Medicaid Act's ESPDT component that has harmed all putative plaintiffs. Dkt. 24, at 2. Norwood helps frame the common question raised by that allegation, contending that the Medicaid Act's EPSDT provisions "simply require the states to ensure that certain services are made available to Medicaid-eligible children," not arrange for them to be provided. Dkt. 22, at 7 (the statutes "do not create a program"). Plaintiffs, in turn, allege "illegal and systemic failures" to provide approved EPSDT services consistent with this admitted policy. Dkt. 39, at 10 (alleging Norwood's assumption that "she is only responsible for determining the need for such services and paying reimbursement should a family be able to secure those services"). Norwood's own authority expressly acknowledges the potential for a common class question based on such a "systemic failure" or "illegal policy." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 498 (7th Cir. 2012) ("systemic failure" or "illegal policy" can "provide the 'glue' necessary to litigate otherwise highly individualized claims as a class," where the agency "operated under" policies "that violated" the act in question). In such a case (as here), "every plaintiff is suffering the same injury as a result of a general policy of the State—even if the services recommended for each patient vary among the class members"—and "it is resolvable on a class-wide basis." *N.B.*, 26 F. Supp. 3d at 773. Rule 23(a)(2)'s commonality requirement is thus satisfied.

So too are the typicality and adequacy-of-representation requirements of Rule 23(a)(3) and (4), and for similar reasons. Norwood disputes both because medical conditions and the services required to treat them can vary from plaintiff to plaintiff, and different circumstances (*e.g.*, reimbursement rates, nurse qualifications, medical

9

complexity) can contribute to the inability to staff those services in each case. Dkt. 24, at 10-12. Such disparities, Norwood argues, render the named Plaintiffs' claims atypical and drive a wedge between those Plaintiffs and the putative members they seek to represent. But again, the named Plaintiffs here challenge the same alleged systemic failure to provide "medically necessary" EPSDT services that harms every other class member. Where a plaintiff class shares such a common injury and common goal of redressing it, Seventh Circuit authority makes clear that "the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses" does not foreclose class certification. *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013) (potential "intra-class conflict" was not "of the sort that defeats both the typicality and adequacy-of-representation requirements of Rule 23(a)"); *see also N.B.*, 26 F. Supp. 3d at 771 ("If the services are 'medically necessary,' the origin of the condition is irrelevant" to typicality.). To the extent any such divergences develop, moreover, they may be addressed through the use of sub-classes later in the litigation. *See Abbott*, 725 F.3d at 813.[3]

## III. Rule 23(b)(2) Requirements

Having determined that Plaintiffs' proposed class meets the requirements of Rule 23(a), only Norwood's challenge under rule 23(b)(2) remains. Rule 23(b)(2) allows class certification if "the party opposing the class has acted or refused to act on

---

[3] Norwood has not challenged the suitability of Plaintiffs' counsel to represent the proposed class, or their request to be designated as class counsel. *See* Dkt. 5, at 11-12; Dkt. 39, at 14. The Court agrees that, given their experience, Plaintiffs' counsel are qualified to represent such a class, and therefore appoints them to do so.

grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "Colloquially, 23(b)(2) is the appropriate rule to enlist when the plaintiffs' primary goal is not monetary relief, but rather to require the defendant to do or not do something that would benefit the whole class." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of the City of Chi.*, 797 F.3d 426, 441 (7th Cir. 2015). Norwood argues that Rule 23(b)(2) has no application in this case, because Plaintiffs "have not alleged a discrete policy or practice on Defendant's part that can be remediated by one indivisible injunction." Dkt. 24, at 14. But as explained above, Plaintiffs challenge a systemic failure by HFS to comply with the Medicaid Act's EPSDT requirements, which Norwood highlights by contending that the Medicaid Act's EPSDT provisions "simply require the states to ensure that certain services are made available to Medicaid-eligible children," not arrange for them to be provided. Dkt. 22, at 7. That dispute and an alleged across-the-board failure to comply with the Medicaid Act's EPSDT requirements are class-wide issues that can and should be addressed on a class-wide basis.[4]

---

[4] *See Chi. Teachers Union*, 797 F.3d at 441 (class seeking declaration that turnaround practice violated Title VII and §§ 1981 and 1983, moratorium on turnarounds, and monitor to oversee new turnaround process satisfied Rule 23(b)(2); *Collins v. Hamilton*, 349 F.3d 371, 376 (7th Cir. 2003) (affirming district court's grant of permanent injunction enforcing EPSDT provisions of Medicaid Act); *N.B.*, 26 F. Supp. 3d at 774-75 ("plaintiffs allege a failure by the State of Illinois to cover services that are mandatory under the EPSDT program"; "success on the plaintiffs' claims will require policy modifications to properly implement EPSDT and the integration mandate; by their very nature such policy changes are generally applicable, and therefore would benefit all class members") (citing *Collins*, 349 F.3d at 376).

Norwood attempts to resist this result by arguing that the injunction Plaintiffs seek would merely require her "to comply" with various Medicaid statutes, and thus, ultimately necessitate "an individualized remedy tailored to secure each putative class member's nursing services." Dkt. 24, at 13. As to the first point, while the system-wide changes Plaintiffs pursue may have the effect of forcing compliance with the Medicaid Act's EPSDT mandates, the Court disagrees that Plaintiffs seek "nothing more than an injunction to require Defendant to comply with" those statutes. Again, they seek systemic reform. "Moreover, the fact that the plaintiffs might require individualized relief does not preclude certification of a class for common equitable relief," so long as the 23(b)(2) class seeks some injunctive and/or declaratory relief that "would apply class-wide." *Chi. Teachers Union*, 797 F.3d at 442; *see also See Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted") (internal quotation marks omitted).

Plaintiffs seek such class-wide relief here, to remedy the systems in place that allegedly fail and/or prevent the arrangement of medically necessary EPSDT services in violation of the Medicaid Act, and which allegedly segregate, threaten to segregate, or otherwise discriminate against Plaintiffs in violation of the Rehabilitation Act, the ADA, and their integration mandates. Such relief would benefit the entire class. And, as explained above, no individual determinations are necessary to grant it, since the medical necessity of the services in question has already been determined for each class member by HFS. Certification under Rule 23(b)(2) is therefore appropriate under both *Dukes*, 564 U.S. at 360, and *Jamie S*, 668 F.3d at 498.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification (Dkt. 4) is granted; Plaintiffs' Motion for Limited Class Discovery on the Issue of Numerosity (Dkt. 28) is denied as moot; and attorneys Robert H. Farley, Jr., Thomas D. Yates, Jane Perkins, and Sarah Somers are appointed as Class Counsel.

Dated: May 17, 2016

Charles P. Kocoras
United States District Judge